UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVE ELSTER,<br><br>    Plaintiff,<br><br>  v.<br><br>VIVID SEATS, INC., et al.,<br><br>    Defendants. | Case No. 20-cv-07679-VC<br><br>**ORDER GRANTING MOTION TO REMAND**<br><br>Re: Dkt. No. 19 |

  This case involves tickets purchased on Vivid Seats for events that were postponed or rescheduled as a result of the pandemic. Apparently, for events that were canceled outright, people who purchased tickets on Vivid Seats received refunds. But for events that were merely postponed or rescheduled, Vivid Seats told ticketholders they would not get refunds.

  Elster, on behalf of himself and a class of people who purchased such tickets, seeks relief under Section 22507 of the California Business & Professions Code. Elster filed the lawsuit in state court, and Vivid Seats has removed it to federal court under the Class Action Fairness Act. The question presented by this motion to remand is whether the lawsuit satisfies CAFA's $5 million amount in controversy requirement.

  Section 22507 provides in relevant part: "The ticket price of any event which is canceled, postponed, or rescheduled shall be fully refunded to the purchaser by the ticket seller upon request." Therefore, if you purchase a ticket from a seller and the event gets postponed or rescheduled, you can force the ticket seller to reverse the transaction. That is, you can get your money back from the seller, and the seller gets the ticket back from you.

  Section 22507 obviously cannot be construed as allowing the buyer to get a full refund

*and* keep the tickets to the postponed or rescheduled event. That would be absurd. Imagine buying tickets to Hamilton for $500 each, getting all your money back when the event is rescheduled, but being able to keep the tickets and go to the rescheduled show for free. To have your tickets "fully refunded" within the meaning of the statute can only mean that the transaction is reversed—you get all your money back and the seller gets the tickets back. *Horwich v. Superior Ct.*, 21 Cal. 4th 272, 276 (1999) (statutory language should not be construed to produce absurd results).

The maximum allowable recovery under the statute is therefore the net value of the reversed transaction. Elster himself concedes this. Because that is the maximum allowable recovery, that is how the amount in controversy must be calculated. *See Arias v. Residence Inn by Marriott*, 936 F.3d 920, 925 (9th Cir. 2019); *Gonzalez v. Comenity Bank*, No. 1:19-CV-00348-AWI-EPG, 2019 WL 5304925, at * 5–6 (E.D. Cal. Oct. 21, 2019). Specifically, the amount in controversy must be measured by the difference between what buyers paid for their tickets and the value of the tickets they would be required to return.

Estimating the amount in controversy therefore requires two steps. First, if the class prevailed, the remedy would be to present class members with the choice of keeping their tickets or getting a refund. The evidence submitted by both sides suggests that the percentage of buyers who choose refunds would be significant. And Vivid Seats provided evidence that the gross value of all the tickets for these events is approximately $18 million. From this evidence, it is reasonable to assume that the *gross* recovery of class members would exceed $5 million, because to reach this threshold only 28% of class members would need to opt for refunds.

But because the statute contemplates reversal of the transaction rather than a windfall to the buyer, the estimate discussed above is inadequate. After all, when a class member returns their ticket, they are returning something of value, even if it may no longer be worth the full price they paid for it. The show has not been canceled outright; it has merely been rescheduled or postponed. Thus, at the second step, the Court must reduce the gross amount of the refunds by the value of the returned tickets. Vivid Seats has provided no estimate (and no evidence from

2

which to make an estimate) of the value of returned tickets. So on this record, any finding as to the true amount in controversy would be pure speculation.

Vivid Seats contends that it is premature to consider the value of the returned tickets because Elster's complaint does not mention them—he asks generically for a "refund" without specifying that "refund" in this context means reversal of the transaction rather than getting the money back plus keeping what was bought. In Vivid Seats' view, that means the value of the returned tickets is a factual defense that must be litigated at a later stage and may not be considered in estimating the amount in controversy.

It's true that where the maximum allowable recovery exceeds the jurisdictional threshold, federal jurisdiction exists even if the more likely outcome after litigation is recovery below that threshold. *Arias*, 936 F.3d at 927. But this is not a case where a plaintiff's expectations for what they might recover are simply unrealistic given the facts of their particular case or the defenses that might be available. Here, the jurisdictional concern stems from the limitations of the statutory remedy itself rather than from efforts to predict the most likely outcome. That the complaint does not mention the return of tickets is irrelevant, because the statute it invokes requires their return.

Vivid Seats also asserts it would not actually receive any returned tickets, because it is not a "ticket seller" for purposes of Section 22507 but merely an "intermediary" between buyers and sellers. Vivid Seats seems to be implying that if the plaintiffs prevailed, the tickets would be returned to their original seller even while Vivid Seats is required to pay the refund to the buyers. This makes no sense. The statute contemplates the reversal of a transaction between a ticket seller and a ticket buyer. Vivid Seats either is or is not that ticket seller. If Vivid Seats is not a ticket seller, it will not receive any returned tickets, but neither will it pay a refund. If it is a ticket seller, it will both owe the refund and have the right to receive the tickets in return. The theory of the complaint is that Vivid Seats is a ticket seller. The amount in controversy must be estimated with reference to that theory of liability.

In sum, Section 22507 limits the amount at stake for both parties to the net value of the

refunds less the value of the returned tickets. Because there is no information on the record about the value of those returned tickets, the Court cannot conclude that it has jurisdiction under CAFA. The case is therefore remanded to the Superior Court of Contra Costa County.

**IT IS SO ORDERED.**

Dated: March 16, 2021

_____
VINCE CHHABRIA
United States District Judge